## THE MARY C. ELPHICKE v. PITTSBURGH STEAMSHIP CO.

### (Circuit Court of Appeals, Sixth Circuit.  June 11, 1903.)

### No. 1,164.

**1. COLLISION—STEAMSHIPS MEETING—VIOLATION OF RULES.**

> The Elphicke, a large lake steamer, heavily laden, when passing down the St. Clair river exchanged signals to pass port to port with the Poe, then about a mile below, coming up with tows.  Shortly after, the Elphicke passed a bend in the river, which required a change to starboard of about six points, but she failed to port her helm soon enough or sufficiently, and her momentum and the current carried her too far to the eastward, and into the course of the Poe, and a collision resulted.  The Poe, although initiating the signal, did not change her course, as required by rule 17 of the rules for navigating the Great Lakes, but kept her course until the collision, even after she saw that the Elphicke was out of her proper position, although she had time and ample room to have gone to starboard sufficiently to have prevented the collision.  *Held*, that both vessels were in fault.

Cross Appeals from the District Court of the United States for the Eastern Division of the Northern District of Ohio.

For opinion below, see 115 Fed. 375.

Harvey D. Goulder, for appellant.

Herman A. Kelley, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge.  This is a suit in admiralty, in which the original libel was filed by the Pittsburgh Steamship Company, owners of the steamship General O. M. Poe, against the Mary C. Elphicke, a steamship belonging to the Federal Steamship Company, to recover damages arising from a collision between those vessels in the waters of the St. Clair river on August 26, 1891.  The Federal Steamship Company appeared and answered, denying the fault of the Elphicke.  The owners of the Elphicke also filed a cross-libel against the Poe seeking to recover the damages to the Elphicke resulting from the collision.  The owners of the Poe responded, denying all fault.  For the sake of brevity, the vessels will be called by the names just given.  Proofs were taken, and upon the hearing before the District Court both vessels were held to be at fault. A decree was entered dividing the damages, which were about $15,000 to each vessel, and both parties have appealed.  The collision occurred early in the morning, but in broad daylight and clear weather. The Poe, which is one of the largest vessels on the Great Lakes, was going up the river on a voyage from Conneaut to Lake Superior ports with two large steel barges in tow on hawsers of 800 to 1,000 feet each.  The Elphicke, a vessel almost as large as the Poe, was coming down loaded with 6,000 tons of iron ore.  While the Poe was passing the lower part of the city of Port Huron, she signaled the Elphicke, then nearly a mile up the river, that she would pass her by the port side, to which the Elphicke assented.  The navigable channel of the St. Clair between the places from which the sig-

nals were given is more than 1,000 feet wide, and the current about 3 miles per hour. Both vessels were moving, and continued to move, at full speed. At a point a little above where the collision occurred, the river, which has been coming down on a stretch bearing east of south, turns to the west of south, making in all a bend of five or six points before the downward·reach is settled on a new course. The Black river flows into the concave side of this arc of the St. Clair, and has, to some extent, filled up by its deposits the channel of the latter river opposite to and for some distance below their junction, thus crowding off to the eastward the navigable channel of the St. Clair. Approximately at the upper end of the east side of the shoal water produced by this sediment is a gas buoy, and at the lower end a black stake, to mark the western side of the channel fit for vessels of deep draught. The distance across the navigable channel to the eastward from the gas buoy is 1,500 feet, and from the stake to the eastern side is 1,100 feet. Respecting the positions and movements of the two steamers when they were approaching each other, the evidence is somewhat conflicting. It would be of no profit to go into a minute detail of it. But, aided by the strong probabilities founded on facts about which there can be no dispute, we draw from the evidence the following conclusions:

The Elphicke, on coming down to the turn, ported her helm to go about; but she either did not begin to port soon enough, or did not turn her helm sufficiently—we cannot say which—to overcome her momentum and the drift of the current, which at that point sets over to the eastern bank of the river. In consequence she passed too far to the eastward of her proper course, and got into a position dangerously near to the course of the Poe, which, as the Elphicke should have seen all the while, was not being changed. Prudent navigation required her first to keep well on her own side of the channel, and, next, if she had failed to do this, to recover herself, and get out of the track of danger. It is true that one of two meeting vessels has the right to expect that the other will do her duty, and may govern her own course in that expectation. The Victory and The Plymothian, 168 U. S. 410, 426, 18 Sup. Ct. 149, 42 L. Ed. 519. But, the Elphicke being herself at fault in her own position, she could not charge the Poe with the entire result of their mutual faults, provided the Poe did not behave wantonly, which is not claimed. The Poe, after having herself given the passing signal, stood up the river on the usual course, and held to it without change until the vessels came into collision. She claims that she was near the Canadian shore. If that were so, she must have seen the sagging to the eastward of the Elphicke for a considerable time before they came together, whereas those in charge of the Poe say they did not' apprehend any danger until the Elphicke was close upon them. We are satisfied that the Poe was not far from 400 feet from the shore, and had plenty of room and time in which to avoid the disaster after the danger of it began to appear. She confesses that she saw the Elphicke out of her proper place and taking measures to right herself, but that she depended upon the Elphicke to retrieve her fault, and refused to vary her own course. The law gives no countenance

to such perversity, but, on the other hand, exacts of each vessel that, notwithstanding the errors of the other, it shall to the end do all in its power to avoid the consequences of the fault. To be sure, it is lenient to a mistake committed in extremity, but it has no excuse for relaxation of care in circumstances which should reasonably excite apprehension of collision, when there is time and opportunity to avert it. The down-bound vessel had the right of way. Her navigation was more difficult than that of the vessel breasting the current: The Poe had taken it upon herself to determine the manner of passing, notwithstanding that right belonged to the other vessel—rule 24—and thereby assumed an added burden of caution. We do not excuse the Elphicke for getting so near to the course of the Poe, but we think the error of the Elphicke had been seen by the Poe for a time amply sufficient to have enabled the latter to have gotten clear if she had exercised the precaution which was due in such circumstances.

For the Poe it is sought to establish the proposition that the Elphicke, when she was approaching, and when she struck the Poe, came rapidly out of her course on a wide angle to the course of the latter; but this seems to us most improbable, and we agree with the District Judge in believing that the vessels were approaching each other nearly end on, and that they were under the operation of rule 17 of the rules for navigating the Great Lakes, which provides that, "when two steam vessels are meeting end on, or nearly end on, so as to involve risk of collision, each shall alter her course to starboard, so that each shall pass on the port side of the other." The Elphicke was altering her course to starboard, and, if the Poe had only slightly altered her course, we have little doubt the disaster would have been avoided. Their courses, when they came together, were almost parallel, and less than the width of either of them apart. The Poe had plenty of room to make the proper maneuver. We think she was rightly adjudged to share the consequences which ensued from her failure to make it.

The decree of the court below is affirmed, with costs.